# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § § § | |
| **v.** | § § | **EP-19-CR-3333-PRM** |
| **ALBERT GONZALEZ MEDINA,** | § § § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

On this day, the Court considered Defendant Albert Gonzalez Medina's [hereinafter "Defendant"] "Motion to Suppress Contraband Evidence and Statements of Defendant" (ECF No. 22) [hereinafter "Motion"], filed on November 7, 2019, the Government's "Response to Defendant's Motion to Suppress and Brief in Support" (ECF No. 26) [hereinafter "Response"], filed on November 11, 2019, Defendant's "Reply to Government's Response to Defendant's Motion to Suppress Contraband Evidence and Statements of Defendant" (ECF No. 28) [hereinafter "Reply"], filed on December 30, 2019, and the Government's "Surreply Concerning the October 16, 2019 Custodial Interrogation of

Defendant" (ECF No. 36) [hereinafter "Surreply"], filed on March 3, 2020, in the above captioned cause.

Defendant avers that evidence obtained at various points during his interactions with law enforcement should be suppressed because it was the result of violations against his Fourth, Fifth, and Sixth Amendment Rights.  Mot. 2; Reply 2–3; *see* U.S. CONST. amends. IV, V, VI.  For the foregoing reasons, the Court will deny Defendant's Motion.

## I.    BACKGROUND

Defendant alleges few facts in support of his arguments; instead, he relies on brief, conclusory allegations throughout his Motion and Reply.  This is true notwithstanding the Court's "Order Requiring Defendant to File a Reply" (ECF No. 27) [hereinafter "Order Requiring Reply"], filed on December 10, 2019, requiring Defendant to file a Reply for the expressed reason that he "provide facts in support of [his] argument, or inform the Court that Defendant concurs that the Government's presentation of the factual record is complete."  Order Requiring Reply 3.  Because Defendant has failed to apprise the Court of its position on the factual record, the Court adopts the Government's uncontested presentation of the facts.

## A.    Factual Background

In the evening of September 19, 2019, four Special Agents [hereinafter "SAs"] of the Texas Department of Public Safety [hereinafter "DPS"], one DPS Lieutenant, and two DPS State Troopers arrived at room one-thirty-five of the La Quinta Hotel located at 6140 Gateway Blvd., El Paso, Texas, in response to reported criminal activity.  Resp. 1.  Three of the SAs approached room one-thirty-five and knocked on the door.  *Id.* at 2.  Defendant and a 40-year-old female, identified as B.L.G., opened the door.  *Id.*  Defendant consented to a protective sweep.  *Id.*  While conducting the protective sweep, SAs Mario Aranda and John Skirmont observed drug paraphernalia on the floor and firearms in the closet.  *Id.*

The SAs then conducted a search of the room after obtaining written consent from Defendant.  *Id.*  As a result of their search, the SAs found .35 kilograms of a crystal substance that later tested positive for the properties of methamphetamine; a clear bag containing a black tar-like substance and a syringe containing a black tar-like substance, both of which weighed approximately two grams, and later tested positive for the properties of heroin; two brown plastic boxes containing

3

various calibers and amounts of ammunition; ten firearms; and various personal identification forms not belonging to either Defendant or B.L.G.  *Id.* at 2–3.  The SAs discovered the .35 kilograms of crystal substance, and one of the guns, a .22 Magnum handgun, in a locked gray hand bag after Defendant provided them with his alleged guess of the combination.  *Id.* at 2.

After discovering the items, the SAs detained Defendant and transported him to the Texas Anti-Gang [hereinafter "TAG"] Center for processing and an interview.  *Id.* at 3.  Upon arrival at the TAG Center, and before any questioning commenced, DPS Lt. Lorrenzo Diaz and SA Michael Carrasco informed Defendant of his right to remain silent pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  Resp. 3. Defendant indicated, both verbally and in writing, that he understood his *Miranda* rights, and agreed to answer questions without the presence of an attorney.  *Id.*

At approximately 11:25 p.m., Lt. Diaz and SA Carrasco began a recorded, custodial interrogation with Defendant.  *Id.*  When asked what his intentions were for the weapons found in room one-thirty-five, Defendant responded that he was being paid to hold on to them but that

4

he did not know what was in the gray bag.  *Id.* at 3–4.  He also claimed

that the drugs were his and that B.L.G. was not involved with either

the drugs or the guns discovered.  *Id.* at 4.

The following day, September 20, 2019, the El Paso County Jail

Magistrate Court appointed the El Paso County Public Defender to

represent Defendant.  Reply 2.

On October 15, 2019, the State of Texas dismissed its case against

Defendant in favor of federal prosecution.  Resp. 4.  The next day, a

Grand Jury issued a two-count indictment charging Defendant with

possession of a Schedule II Controlled Substance with intent to

distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(viii),

and unlawfully transporting firearms in violation of 18 U.S.C.

§§ 922(g)(1) and 924(a)(2).  *See* Indictment 1, Oct. 16, 2019, ECF No. 6.

On September 24, 2019, an arrest warrant was issued, and in the

early afternoon of October 16, 2019, Homeland Security Investigations

[hereinafter "HSI"] SA Paul Boothe took Defendant, who was being held

at the El Paso County Detention Annex Facility, into federal custody.

Arrest Warrant, Oct. 16, 2019, ECF No. 16; Resp. 4.  SA Boothe

transported Defendant to the TAG Center after Defendant consented to

5

an interview.  Resp. 4.  Prior to beginning the interview, SA Boothe

provided Defendant with his *Miranda* rights and Defendant indicated

in writing and verbally that he understood his rights.  *Id.*  He also

agreed to speak to the SAs without the presence of an attorney.  *Id.*

At approximately 1:10 p.m., SA Boothe, joined by SA Ruben

Bustillos, conducted a custodial interrogation of Defendant. *Id.*  The

SAs asked Defendant to explain what happened on September 19, 2019,

the day he was taken into custody.  *Id.*  Defendant stated that on the

evening in question, after hearing a knock on the door, he looked out

the window and saw police officers standing outside of the door.  *Id.* at

4–5.  He then admitted to hiding a wooden box of heroin so that the

officers could not see it out in the open once he opened the door.  *Id.* at

5.  Defendant stated that after opening the door, he complied with a

request to step outside so that the officers could search the room.  *Id.* at

5.  Eventually Defendant was put into one of the officer' vehicles.  *Id.*

While in the vehicle, an officer asked him for the combination to a gray

locked bag; Defendant's answer was that he did not know the

combination but that he thought it started with zero.  *Id.*  Defendant

stated that he was being paid by someone named David to hold onto the

bag, and that on the night in question, the officers discovered methamphetamine inside of it.  *Id.*  Defendant initially stated that he did not know what was inside of the bag, but then later expressed knowledge of the methamphetamine based on a prior interaction with David in which he asked David for methamphetamine and then saw him retrieve some from the bag.  *Id.*

### B.    Procedural History

On November 6, 2019, Defendant filed his Motion, moving to exclude all physical and testimonial evidence obtained by law enforcement pursuant to the Fourth and Fifth Amendment.  Mot. 2. The Government filed a Response on November 19, 2019.  Resp.

On December 10, 2019, the Court ordered Defendant to file a Reply to the Government's Response.  Order Requiring Reply 3. Defendant did so on December 30, 2019.  Reply 1.  In his Reply, Defendant introduced a Sixth Amendment right to counsel challenge regarding the October 16, 2019, custodial interrogation; an argument not raised in his initial motion.  *Id*. at 2.  Thereafter, the Court sua sponte ordered the Government to file a Surreply to Defendant's Sixth Amendment argument raised in his Reply.  Order Requiring

Government to File a Surreply, Mar., 2, 2020, ECF No. 33.  In

accordance with the Court's order, the Government filed a Surreply on

March 2, 2020.  Therein, the Government made the following

statement:

> The prosecution agrees to refrain from using Defendant's
> statement of October 16, 2019 in her case-in-chief. The
> prosecution does not oppose a Court Order of suppression of
> Defendant's October 16, 2019 statement for purposes of the
> Government's case-in-chief. However, should the situation
> arise in which the statement could be used for other
> purposes, such as impeachment of the Defendant by a prior
> inconsistent statement, the prosecution respectfully asks the
> Court to revisit the issue at such time.

Surreply 1.

## II.    LEGAL STANDARD

Defendant seeks to exclude all physical and testimonial evidence

resulting from Defendant's encounters with law enforcement.  Mot. 2.

Defendant's arguments are based on the Fourth, Fifth, and Sixth

Amendments of the Constitution of the United States.  Mot. 2; Reply 3.

### A.    Fourth Amendment

The Fourth Amendment to the United States Constitution

guarantees "[t]he right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and

seizures." U.S. CONST. amend. IV.  The Supreme Court has determined

that warrantless searches and seizures are per se unreasonable unless

they fall within a few narrowly defined exceptions.  *United States v.*

*Cardenas*, 9 F.3d 1139, 1147 (5th Cir. 1993) (citing *Coolidge v. New*

*Hampshire*, 403 U.S. 443, 454–55 (1971)).  In addition, a warrant is

generally required before entry of a person's home, whether to make an

arrest or to search for specific objects.  *Payton v. New York*, 445 U.S.

573 (1980); *Johnson v. United States*, 333 U.S. 10 (1948).  "[O]ne of the

specifically established exceptions to the requirements of both a

warrant and probable cause is a search that is conducted pursuant to

consent."  *United States v. Scroggins*, 599 F.3d 433, 440 (5th Cir. 2010)

(quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973)).

"When courts review a search justified by consent, there are four

distinct issues."  *United States v. Freeman*, 482 F.3d 829, 831 (5th Cir.

2007).  "First, as a threshold matter, the government must demonstrate

that the defendant did consent," a determination that is "based on the

totality of circumstances."  *Id.* at 831–32 (citing *United States v. Price*,

54 F.3d 342, 345–46 (7th Cir. 1995)).  Second, if the Government is

successful in demonstrating consent, the Government must next

9

demonstrate that the defendant consented voluntarily. *Id.* at 832 (citing *Schneckloth*, 412 U.S. at 222). Third and fourth, the Government must show that "the search was within the scope of consent" and that "the consenting individual had authority to consent." *Id.* (citing *United States v. Ibarra*, 965 F.2d 1354, 1356 n.2 (5th Cir. 1992)); *United States v. Matlock*, 415 U.S. 164, 169–71 (1974); *Illinois v. Rodriguez*, 497 U.S. 177, 183–89 (1990)).

Courts assess the second factor, voluntariness, based on the totality of the circumstances. *Schneckloth*, 412 U.S. at 227 ("[T]he question [of] whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances."). In particular, courts in the Fifth Circuit rely on a six-factor test:

> (1) [T]he voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.

*Freeman*, 482 F.3d at 832 (citing *United States v. Kelley*, 981 F.2d 1464, 1470 (5th Cir. 1993)). "All six factors are relevant, but no single one is

10

dispositive or controlling." *Id.* "The government has the burden of proving, by a preponderance of the evidence, that the consent was voluntary." *Kelley*, 981 F.2d at 1470 (citing *United States v. Yeagin*, 927 F.2d 798, 800 (5th Cir. 1991)).

## B.    Fifth Amendment

The Fifth Amendment to the United States Constitution guarantees that no individual "shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V.  In *Miranda*, the Supreme Court "established that the prosecution may not use statements stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *United States v. Bennett*, 626 F.2d 1309, 1311 (5th Cir. 1980) (citing *Miranda*, 384 U.S. at 444).

"*Miranda* warnings must be administered prior to 'custodial interrogation.'" *United States v. Bengivenga*, 845 F.2d 593, 595 (5th Cir. 1988) (citing *Miranda*, 384 U.S. at 479).  "In order to use an in-custody statement against a defendant, the government must demonstrate that the defendant was warned of his right to remain

11

silent and his right to consult with an attorney." *United States v. Anderson*, 755 F.3d 782, 790 (5th Cir. 2014) (citing *Miranda*, 384 U.S. at 471).

However, law enforcement officials need not advise a defendant of his *Miranda* rights where he voluntarily gives a statement in a non-custodial situation. *See Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) ("[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question."). A suspect is "in custody" for Miranda purposes "when placed under formal arrest or when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement to the degree which the law associates with formal arrest." *United States v. Cavazos*, 668 F.3d 190, 193 (5th Cir. 2012) (quoting *Bengivenga*, 845 F.2d at 596)).

Custody for Miranda purposes requires a greater restraint on freedom than seizure under the Fourth Amendment. *Bengivenga*, 845 F.2d at 598 (noting that "a Fourth Amendment seizure does not necessarily render a person in custody for purposes of *Miranda*"). "A determination of whether a defendant is 'in custody' for *Miranda*

12

purposes depends on the "totality of circumstances.'" *Cavazos*, 668 F.3d 194 (quoting *California v. Beheler*, 463 U.S. 1121, 1125, (1983)).

Even if the accused is in custody, he may still waive effectuation of his *Miranda* rights provided it was "made voluntarily, knowingly and intelligently." *Miranda*, 384 U.S. at 444. "The government bears the burden of proving by a preponderance of the evidence that both the waiver of *Miranda* rights and the confession were voluntary." *United States v. Raymer*, 876 F.2d 383, 386 (5th Cir. 1989) (citing *Colorado v. Connelly*, 479 U.S. 157, 168–69 (1986)). Courts consider the totality of the circumstances to determine whether the defendant acted voluntarily such that "'the statement is the product of the accused's free and rational choice.'" *United States v. Bell*, 367 F.3d 452, 461 (5th Cir. 2004) (quoting *United States v. Broussard*, 80 F.3d 1025, 1033 (5th Cir. 1996)). A statement is involuntary when it "result[s] from coercive police conduct," *id.* (citing *Connelly*, 479 U.S. at 163–65), and "deprives the defendant of knowledge essential to his ability to understand the nature of his rights and the consequences of abandoning them," *id.* (citing *Soffar v. Cockrell*, 300 F.3d 588, 596 (5th Cir. 2002) (en banc)).

A waiver can be made either expressly or impliedly. An express

waiver, such as "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel," operates as "strong proof of the validity of that waiver." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

## C.    Sixth Amendment

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. The Sixth Amendment right to counsel attaches at the initiation of "adversary judicial proceedings." *Michigan v. Jackson*, 475 U.S. 625, 629–30 (1986), *rev'd on other grounds, Montejo v. Louisiana*, 556 U.S. 778 (2009). Thus, "a person is entitled to the help of a lawyer at or after the time that judicial proceedings have been initiated against him— 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Brewery v. Williams*, 430 U.S. 625, 629– 30 (1986) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)).

Just as a defendant can waive his Fifth Amendment *Miranda* rights, so too can he waive his Sixth Amendment right to counsel. *Montejo*, 556 U.S. at 786. A valid waiver must be "voluntary, knowing,

14

and intelligent." *Id.* at 786. (citing *Patterson v. Illinois*, 487 U.S. 285, 292 n.4; *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). "The defendant may waive the right whether or not he is already represented by counsel; the decision to waive need not itself be counseled." *Id.* "And when a defendant is read his *Miranda* rights . . . and agrees to waive those rights, that typically does the trick, even though the *Miranda* rights purportedly have their source in the *Fifth* Amendment . . . ." *Id.*

## III.  ANALYSIS

Defendant moves to suppress evidence obtained through three separate interactions with law enforcement:  (1) all physical and testimonial evidence obtained as a result of the September 19, 2019, search of room one-thirty-five of the La Quinta Hotel; (2) all statements made by Defendant throughout the first custodial interrogation that took place on September 9, 2019, at the TAG Center; and (3) all statements made by Defendant throughout the second custodial interrogation that took place on October 16, 2019, at the TAG Center.

The Court begins its analysis by considering Defendant's Fourth Amendment claim, followed by his Fifth Amendment claims, and ends with his Sixth Amendment claim.  First, the Court will analyze whether

15

Defendant voluntarily consented to the search of his hotel room. Next, the Court will consider Defendant's multiple Fifth Amendment claims. The Court will determine whether Defendant's initial encounter with law enforcement, prior to being formally arrested, was unconstitutional because Defendant was either (1) improperly coerced or (2) in custody for purposes of *Miranda* but was not read his rights. The Court then considers whether, once in custody, Defendant validly waived his right to counsel prior to both custodial interrogations. Finally, the Court assesses whether Defendant's Sixth Amendment right to counsel was violated when law enforcement interviewed Defendant without assistance of counsel during the October 16, 2019, custodial interrogation.

After due consideration, the Court concludes that (1) Defendant voluntarily consented to the search of his hotel room; (2) Defendant was not coerced during his pre-arrest interaction with law enforcement, and was also not in custody for purposes of *Miranda*; (3) Defendant validly waived his Fifth Amendment right to counsel before the two custodial interrogations; and (4) Defendant validly waived his Sixth Amendment right to counsel before the October 16, 2019, custodial interrogation.

16

Accordingly, the Court is of the opinion that neither the DPS officers nor the HSI SAs violated Defendant's Fourth, Fifth, or Sixth Amendment rights.  Therefore, for the reasons stated below, no physical or testimonial evidence will be suppressed.

## A.    Fourth Amendment

First, the Court considers whether Defendant voluntarily consented to law enforcement searching his hotel room on the night of September 19, 2019.  Defendant moves to suppress all physical evidence because the search was "unlawful and performed without a warrant." Mot. 1.  Further, Defendant contends that "the consent provided [to the search], if any, was given pursuant to coercion, duress and the threat of deadly force."  *Id.*  Defendant also claims that all evidence obtained after the unconstitutional search constitutes "fruit of the poisonous tree," and must be excluded.  Reply 2; *Silverthorne Lumber Co. v. United States*, 251 U.S. 385 (1920).  After due consideration, the Court is of the opinion that the Government has met its burden of establishing that Defendant's consent to search his hotel room was given voluntarily.

As articulated above, there are four distinct issues that a court must consider when assessing a search justified by consent:  first,

whether the government demonstrated under the totality of the circumstances that the defendant in fact consented; second, whether the government has shown that the consent was voluntary; third and fourth, whether "the search was within the scope of consent" and that "the consenting individual had authority to consent." *Freeman*, 482 F.3d at 831 (citing *Price*, 54 F.3d at 345–46); *id.* at 832 (citing *Schneckloth*, 412 U.S. at 222); *id.* (citing *Ibarra*, 965 F.2d at 1356, n.2); *Matlock*, 415 U.S. at 169–71; *Rodriguez*, 497 U.S. at 183–89.

The first, third, and fourth factors are not at issue in this case. Defendant orally and in writing consented to the search of the hotel room, satisfying the first factor.  Resp. Ex. 1.  Because there are no facts alleging that the search extended outside of the scope of what was agreed to in the Consent Form, the third factor is not at issue.  Lastly, Defendant, as a guest in a hotel room, had the authority to consent to the search.  *See Stoner v. California*, 376 U.S. 483, 490 (1964) ("No less than a tenant of a house, or the occupant of a room in a boarding house, a guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures.") (citing *McDonald v. United*

*States*, 335 U.S. 451 (1948)); *Johnson v. United States*, 333 U.S. 10

(1948). Therefore, the Court will limit its analysis to the second factor.

Accordingly, the Court now turns to the voluntariness of

Defendant's consent. As discussed above, courts in the Fifth Circuit

must apply a six-factor test when assessing voluntariness:

> (1) [T]he voluntariness of the defendant's custodial status;
> (2) the presence of coercive police procedures; (3) the extent
> and level of the defendant's cooperation with the police; (4)
> the defendant's awareness of his right to refuse to consent;
> (5) the defendant's education and intelligence; and (6) the
> defendant's belief that no incriminating evidence will be
> found.

*Freeman*, 482 F.3d at 832–33 (citing *Kelley*, 981 F.2d at 1470).

First, although the Defendant was not under arrest until after the

officers initiated the search, at no point was Defendant's custodial

status voluntary. A suspect's ability to end his encounter with law

enforcement is the touchstone for assessing voluntariness. *See, e.g.*,

*United States v. Sanchez-Pena*, 336 F.3d 431, 443 (5th Cir. 2003)

(emphasizing, in its determination that consent was voluntary, that the

consent to search was given after the officer had signaled that the

suspect was free to leave). In the instant case, Defendant likely did not

think he was "free to leave": seven DPS agents arrived at his hotel

19

room late at night informing him that they had received reports of criminal activity.  Indeed, the Government concedes that Defendant was "obviously not free to leave."  Resp. 8.  Thus, even though Defendant was not under formal arrest at the time that he signed the consent-to-search form, his custodial status was involuntary.  This factor weighs against voluntariness.

Second, the Court determines that no coercive police procedures were present at the time of Defendant's consent to the search.  In determining whether coercive procedures were used, courts have considered whether the law enforcement officials present at the scene drew their weapons, raised their voices, or threatened the defendant.  *See United States v. Mata*, 517 F.3d 279, 291 (5th Cir. 2008) (noting lack of coercion where officers did not have their weapons drawn and did not yell at or threaten the defendant); *see also United States v. Martinez*, 410 F. App'x 759, 764 (5th Cir. 2011) ("The officers were not pointing their firearms at anyone and were not threatening [at the defendant] or shouting.").  Here, there is no evidence that DPS officers used any such tactics.  Indeed, Defendant has alleged no facts indicating that the DPS agents used "intimidation, threats, [or] abuse (physical or psychological)" to coerce Defendant into his consent to search.  *See*

20

*Jones*, 475 F.2d at 730.  Thus, the second factor supports voluntariness.

Third, Defendant fully cooperated with the DPS agents leading up to their request for his consent to search.  Relevant to the inquiry of voluntariness is whether Defendant's consent to the search is "consistent with the rest of [the defendant's] behavior that night." *Martinez*, 410 F. App'x at 764.  Here, Defendant was cooperative with the DPS agents and complied with every one of their requests:  he opened the door even though he knew officers were on the other side, he willingly spoke with the officers, and he agreed to step outside of the hotel room so that the officers could conduct a protective sweep.  There is no evidence to indicate that Defendant was resistant or combative.  Defendant's actions evince his consent, not mere acquiescence, to the officers' requests.

Fourth, the Government concedes that Defendant was not explicitly informed of his right to refuse consent.  Resp. 9.  This factor militates against voluntariness.

Fifth, the Court determines that there is not enough information about Defendant's education and intelligence to either support or undermine voluntariness.  The Government points to Defendant's age and number of prior encounters with law enforcement as reason to believe that Defendant should have been aware of his rights regarding

searches.  Resp. 10.  The Court is not convinced.  However, as

Defendant has alleged no facts rebutting this claim, the Court is left

with little to make its decision.  As such, the Court concludes that this

factor is in equipoise and weighs neither for nor against voluntariness.

Sixth, it is clear to the Court that Defendant was aware that

incriminating evidence would be found were he to consent to a search.

Consent is more likely to be voluntary when the defendant did *not* know

incriminating evidence would be found and, conversely, involuntary

when the defendant knew incriminating evidence would be found.  *See*

*United States v. Ponce*, 8 F.3d 989, 998 (5th Cir. 1993) (holding consent

to search was voluntary when the defendant stated, "Dang, I forgot it

was there," upon the officer's discovery of heroin in the defendant's

watch pocket); *United States v. Sanchez-Mendoza*, No. MO-09-CR-003,

2009 WL 10680137, at *5 (W.D. Tex. Apr. 29, 2009) (holding that the

defendant's statement that she was unaware cocaine had been placed in

her vehicle "suggests that consent was voluntary because she would not

have known that incriminating evidence would be discovered").  In the

instant case, Defendant has not asserted that he was aware that

incriminating evidence would be found.  However, considering the

22

significant quantity of guns and drugs discovered in the hotel room, the Court is of the opinion that Defendant was most likely aware that incriminating evidence was going to be found.  Thus, this factor weighs against voluntariness.

When considered in totality, these factors support a determination that Defendant's consent to search was voluntary.  The Court concludes that the second and third factors are particularly persuasive.  Despite Defendant's allegations, there are no facts in the record to substantiate his claim that that the DPS agents used coercive tactics.  All evidence indicates that Defendant's encounter with the DPS agents was proper. Additionally, Defendant cooperated completely with the DPS agents throughout the entirety of the search; he was compliant with every one of the DPS agents' requests.  These factors substantially outweigh those aspects of the encounter that undermine voluntariness:  that Defendant's custodial status was not voluntary, that he was not explicitly informed of his right to refuse consent, and that he likely knew that incriminating evidence would be found.  Accordingly, the Court determines that the totality of the circumstances weigh in favor of voluntariness.

In sum, after due consideration, the Court is of the opinion that Defendant voluntarily consented to the search of his hotel room. Therefore, the DPS agents did not violate Defendant's Fourth Amendment rights and the evidence obtained as a result of the consented search of his hotel room should not be suppressed. Finally, this determination negates any need for the Court to undertake a fruit-of-the-poisonous tree analysis. *See* Reply 2.

### B.    Fifth Amendment

Next, the Court considers whether Defendant's statements to law enforcement must be excluded because the officers violated his privilege against self-incrimination. Because Defendant aims to exclude "any and all statements made by Defendant," and not just those made during the September 19, 2019, and October 16, 2019, custodial interrogations, the Court must evaluate Defendant's interactions with law enforcement in two stages: before Defendant was formally arrested, and after Defendant was formally arrested. *See* Reply 5. For the reasons stated below, the Court is of the opinion that at no point during his interactions with either the DPS agents or the HSI SAs was Defendant's Fifth Amendment privilege against self-incrimination

24

violated, neither before nor after he was formally arrested.  Accordingly, none of Defendant's statements should be suppressed on Fifth Amendment grounds.

### 1. Statements Made Before Defendant Was Formally Arrested

Defendant attempts to exclude statements he made to the DPS agents prior to being taken into formal custody.  He contends that "at the time the Government initially confronted Defendant, the agents of the Government were using the threat of deadly force and had drawn down on Defendant and his girlfriend."  Reply at 1.  If this was the case, then Defendant's statements would have to be suppressed because (1) they were made involuntarily, and (2) Defendant was in custody before being formally arrested and should have been read his *Miranda* rights. However, the Court determines that neither of Defendant's claims are supported by the record.  As such, Defendant's statements prior to being formally arrested should not be suppressed.

The Fifth Amendment to the United States Constitution guarantees that no individual "shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  In *Miranda*, the Supreme Court "established that the prosecution may not use

statements stemming from custodial interrogation of the defendant
unless it demonstrates the use of procedural safeguards effective to
secure the privilege against self-incrimination." *Bennett*, 626 F.2d at
1311 (citing *Miranda*, 384 U.S. at 444).  However, law enforcement
officials need not advise a defendant of his Miranda rights when he
voluntarily gives a statement in a non-custodial situation.  *Oregon*, 429
U.S. at 495.  Further, a defendant may be in custody for purposes of a
Fourth Amendment seizure, but not in custody for purposes of *Miranda*.
When determining whether *Miranda* warnings should have been
provided to a defendant who has not been arrested, courts must
evaluate under the totality of circumstances whether a "reasonable
person in the suspect's position would have understood the situation to
constitute a restraint on freedom of movement *to the degree which the
law associates with formal arrest*." *Cavazos*, 668 F.3d at 193 (emphasis
added) (quoting *Bengivenga*, 845 F.2d at 596).

 In the instant case, neither of Defendant's Fifth Amendment
claims pass muster.  First, Defendant has alleged no facts and put forth
no legal support to substantiate his assertion that the officers
threatened him or his girlfriend with deadly force.  Indeed, there is no

evidence to support such an assertion.  Accordingly, the Court rejects

this claim.  Second, although the Court determined that Defendant was

in a custodial situation for purposes of a Fourth Amendment seizure,

the higher threshold under *Miranda* has not been met.  While it is true

that Defendant was not free to leave when he was approached by the

DPS agents at the hotel room on September 19, 2019, the restriction on

his freedom did not rise to the level associated with a formal arrest:

Defendant's interaction with law enforcement prior to being arrested

was brief and consensual, Defendant interacted with law enforcement

in a public setting and not a stationhouse, and Defendant was not

physically restrained.  *See Berkermer v. McCarty*, 468 U.S. 420, 437–38

(1984) (holding that *Miranda* warnings are not required during a traffic

stop in part because of the brief nature of the interaction); *Bengivenga*,

845 F.2s at 599–600 (noting that an interrogation that takes place in a

public environment "reduces the hazard that police might resort to

overbearing means to elicit incriminating responses and diminishes the

[accused's] fear of abuse"); *Barfield v. Alabama*, 552 F.2d 1114, 1118

(5th Cir. 1977) (noting that not being "physically restrained" supports a

finding of non-custody).  Importantly, Defendant has raised no

27

arguments to conclude otherwise.  Thus, the totality of the circumstances, indicate that Defendant's statements prior to being formally arrested should not be excluded.

### 2. Statements Made After Defendant Was Formally Arrested

The Court now assesses the validity of Defendant's waivers of his *Miranda* rights prior to the two custodial interrogations.  The accused may waive his *Miranda* rights during a custodial interrogation provided it was done "voluntarily, knowingly and intelligently," with voluntariness being determined based on the totality of the circumstances.  *Miranda*, 384 U.S. at 444.  Express waivers, such as "[a]n express written or oral statement of waiver of the right to remain silent or of the right to counsel," operate as "strong proof of the validity of that waiver." *Butler*, 441 U.S. at 373.

In the instant case, Defendant expressly waived his *Miranda* rights before both custodial interrogations:  first, the September 19, 2019, interview with the DPS agents at the TAG center, and second, the October 16, 2019, interview with the HIS SAs at the TAG center.  Resp. Exs. 2–3.  After considering each waiver separately, the Court concludes that both waivers were valid and that none of the statements made

during either custodial interrogation should be suppressed.

a.  The September 19, 2019, Custodial Interrogation

Defendant contests the voluntariness of his *Miranda* rights waiver

prior to the September 19, 2019, custodial interrogation, purporting

that "[t]he Government's threat of the use of deadly force . . . tainted the

11:25 pm statement by Defendant on September 19, 2019."  Reply 2.

After due consideration, the Court concludes that Defendant validly

waived his *Miranda* rights prior to the September 19, 2019, custodial

interrogation.

After the search of Defendant's hotel room, Defendant was

detained and transported to the TAG center.  Resp. 3.  At

approximately 11:25 p.m., before initiating the custodial interrogation,

the DPS officers read Defendant his *Miranda* rights; Defendant then

verbally and in writing indicated that he understood and agreed to

answer questions without the presence of an attorney.  *Id.*; Resp. Ex. 2.

 Although Defendant is correct that "his statement was the

product of custodial interrogation," there is no evidence to indicate that

the Government threatened him with the use of deadly force or that

there was anything improper about the interrogation.  Reply 2.

29

Accordingly, considering the strong presumption of validity given to express waivers, the totality of the circumstances support a determination that Defendant acted voluntarily when he waived his *Miranda* rights before the September 19, 2019, custodial interrogation.

### b. The October 16, 2019, Custodial Interrogation

Defendant also contends that the October 16, 2019, interview violated his "5[th] Amendment privilege against self-incrimination" because the SAs interrogated Defendant without the "presence and assistance" of his public defender.[1]  *Id.*  The Court determines that Defendant also validly waived his *Miranda* rights prior to the October 16, 2019, custodial interrogation.

At approximately 12:45 p.m. on October 16, 2019, Defendant was taken into federal custody by HSI SAs.  Resp. 4.  Shortly thereafter, Defendant agreed to an interview and the SAs transported him to the TAG center.  *Id.*  Before commencing the interview, the SAs provided Defendant with his *Miranda* rights.  *Id.*; Resp. Ex. 3.  Defendant read his rights and stated, both verbally and in writing, that he understood

---

[1] Defendant had not been assigned a Public Defender at the time of the September 19, 2019, custodial interrogation.  *See* Reply 2.

his rights and agreed to speak with the SAs without the presence of an attorney.  Resp. 4, Ex. 3.

As mentioned above, a defendant can waive his Fifth Amendment *Miranda* rights as long as he does so "voluntarily, knowingly, and intelligently."  *Miranda*, 384 U.S. at 444.  Here, Defendant did just that, both orally and in writing.  Defendant has asserted no reasons to question the waiver; and indeed, there is no evidence in the record that indicates it was invalid.  Defendant raises no other arguments in relation to the second interview.  Thus, the October 16, 2019, custodial interrogation was constitutional because Defendant validly waived his Fifth Amendment *Miranda* rights.

## C.    Sixth Amendment

Finally, the Court considers whether Defendant's statements from the October 16, 2019, custodial interrogation should be suppressed. Defendant avers that because the HSI SAs interrogated Defendant "without the presence and assistance" of his public defender, in contravention of Defendant's Sixth Amendment right to counsel, his statements from the second custodial interrogation must be suppressed.

31

Reply 3.  For the reasons stated below, the Court concludes that Defendant's statements should not be suppressed.

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence."  U.S. CONST. amend. VI. However, just as a defendant can waive his Fifth Amendment *Miranda* rights, so too can he waive his Sixth Amendment right to counsel. *Montejo*, 556 U.S. 786.  A valid waiver must be "voluntary, knowing, and intelligent."  *Id.*  (citing *Patterson*, 487 U.S. at 292 n.4; *Johnson*, 304 U.S. at 464).

In the instant case, the Court rules that Defendant validly waived his Sixth Amendment right to counsel.  The Court held above that Defendant validly waived his Fifth Amendment *Miranda* rights before the October 16, 2019, custodial interrogation.  This determination was based on the Government's presentation of undisputed facts.  The Court determines that the same reasons for denying Defendant's Fifth Amendment claim apply wholly to Defendant's Sixth Amendment claim. No facts exist in the record that indicate Defendant's Sixth Amendment *Miranda* waiver was not "voluntary, knowing, or intelligent."  *Montejo*,

556 U.S. at 786 (citing *Patterson*, 487 U.S. at 292 n.4; *Johnson*, 304 U.S. at 464).  Thus, the Court concludes that Defendant's statements from the October 16, 2019, custodial interrogation should not be suppressed.[2]

## IV.   EVIDENTIARY HEARING

Defendant requests an evidentiary hearing; however, the Court is of the opinion that no evidentiary hearing is required.  Reply 3.  "[A]n evidentiary hearing is required on a motion to suppress only when necessary to receive evidence on an issue of fact."  *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983) (citation omitted).  Evidentiary hearings on motions to suppress are "designed for the presentation of evidence in support of factual allegations which, if proven, would justify the relief sought."  *Id*. at 738.

Here, Defendant has alleged no facts that would justify relief.  As stated above, Defendant has merely asserted brief, conclusory allegations, electing to not refute the Government's presentation of the facts.  Indeed, Defendant has not indicated that there are factual

---

[2] This is true notwithstanding the Government's representation that it would refrain from using Defendant's statements from the October 16, 2019, custodial interrogation in it case-in-chief, and that it would not oppose an order to suppress statements made by Defendant from that interrogation from its case-in-chief.  *See* Surreply 1.

disputes that could be resolved by an evidentiary hearing.  Accordingly, the Court is of the opinion that an evidentiary hearing is not warranted.

## V.    CONCLUSION

In sum, the Court determines that no physical or testimonial evidence should be suppressed in this case.  The Government has met its burden of establishing that Defendant's Fourth, Fifth, and Sixth Amendment rights were not violated during any of Defendant's interactions with law enforcement.  The six-factor voluntariness test, when considered in totality, evinces that the DPS officers' search of Defendant's hotel room was in accordance with the Fourth Amendment. Further, Defendant was not in custody until after he was formally arrested, meaning that *Miranda* warnings were not necessary until that point.  Once in custody, Defendant voluntarily waived his Fifth Amendment *Miranda* rights prior to both custodial interrogations. Additionally, Defendant waived his Sixth Amendment *Miranda* rights prior to the October 16, 2019, custodial interrogation.  Therefore, the Court denies Defendant's Fourth, Fifth, and Sixth Amendment claims.

Accordingly, **IT IS ORDERED** that Defendant Albert Gonzalez

Medina's "Motion to Suppress Contraband Evidence and Statements of

Defendant" (ECF No. 22) is **DENIED**.

      **SIGNED** this **20th day** of **July, 2020**.

**PHILIP R. MARTINEZ**
**UNITED STATES DISTRICT JUDGE**